FILED
CLERK, U.S. DISTRICT COURT

OCT 26 2011

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JARED GREEN,                          )     NO. CV 11-2722-JST(E)
                                      )
                    Petitioner,       )
                                      )
        v.                            )     ORDER ADOPTING FINDINGS,
                                      )
RANDY GROUNDS,                        )     CONCLUSIONS AND RECOMMENDATIONS OF
                                      )
                    Respondent.       )     UNITED STATES MAGISTRATE JUDGE
                                      )
_____ )

    Pursuant to 28 U.S.C. section 636, the Court has reviewed the
Petition, all of the records herein and the attached Report and
Recommendation of United States Magistrate Judge.  The Court approves
and adopts the Magistrate Judge's Report and Recommendation.

    IT IS ORDERED that Judgment be entered denying and dismissing the
Petition with prejudice.

///
///
///
///

1        IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2   the Magistrate Judge's Report and Recommendation and the Judgment

3   herein on Petitioner, Petitioner's counsel, and counsel for

4   Respondent.

5

6        LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8        DATED:    _____October 26_____, 2011.

9

10

11

12                              JOSEPHINE STATON TUCKER
                                UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                  **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JARED GREEN,                    )    NO. CV 11-2722-JST(E)
                                     )
12              Petitioner,          )
                                     )
13        v.                         )    REPORT AND RECOMMENDATION OF
                                     )
14   RANDY GROUNDS,                  )    UNITED STATES MAGISTRATE JUDGE
                                     )
15              Respondent.          )
     _____)
16

17        This Report and Recommendation is submitted to the Honorable

18   Josephine Staton Tucker, United States District Judge, pursuant to

19   28 U.S.C. section 636 and General Order 05-07 of the United States

20   District Court for the Central District of California.

21

22                          **PROCEEDINGS**

23

24        Petitioner filed a "Petition for Writ of Habeas Corpus By a

25   Person in State Custody" on March 31, 2011, accompanied by a

26   "Supplement to Petition for Writ of Habeas Corpus, etc." ("Pet.

27   Supp."). Respondent filed an Answer on May 26, 2011. Petitioner

28   filed a Reply on July 29, 2011.

**BACKGROUND**

The State charged Petitioner and his co-defendant, Bobby Lee Todd, with assault by means likely to produce great bodily injury upon Yoon Chae Kim in violation of California Penal Code section 245(a)(1) (Clerk's Transcript ["C.T."] 44-46).  The State also charged Todd with misdemeanor vandalism (C.T. 44-46).  Prior to trial, Todd pled guilty pursuant to a plea agreement (see Reporter's Transcript ["R.T."] E-13-15, 391, 474).

A jury found Petitioner guilty on the assault charge (R.T. 269-70; C.T. 105).  The court found true the allegation that Petitioner had suffered a prior felony conviction qualifying as a "strike" within the meaning of California's Three Strikes Law, California Penal Code sections 667(b) - (i) and 1170.12(a) - (d) (R.T. 550; C.T. 311).[1]  The court imposed a low term sentence of two years, doubled pursuant to the "one strike" provisions of the Three Strikes Law,[2] for a total term of four years (R.T. 676; C.T. 387-88).

The California Court of Appeal affirmed the judgment (Respondent's Lodgment 4; see People v. Green, 2010 WL 2220062 (Cal.

---

[1]   The Three Strikes Law consists of two nearly identical statutory schemes.  The earlier provision, enacted by the Legislature, was passed as an urgency measure, and is codified as California Penal Code §§ 667(b) - (i) (eff. March 7, 1994).  The later provision, an initiative statute, is embodied in California Penal Code § 1170.12 (eff. Nov. 9, 1994).  See generally People v. Superior Court (Romero), 13 Cal. 4th 497, 504-05, 53 Cal. Rptr. 2d 789, 917 P.2d 628 (1996).  Petitioner was sentenced under both provisions (see C.T. 388).

[2]   See Cal. Penal Code §§ 667(e)(1), 1170.12(c)(1).

2

1 | App. June 4, 2010)).  The California Supreme Court denied Petitioner's
2 | petition for review summarily (Respondent's Lodgment 8).

3 |

4 |                        **SUMMARY OF TRIAL EVIDENCE**

5 |

6 |      The following summary is taken from the opinion of the California
7 | Court of Appeal in People v. Green, 2010 WL 2220062 (Cal. App. June 4,
8 | 2010).  See Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009)
9 | (taking factual summary from state appellate decision).

10 |

11 |      Kim [the victim] worked at a 7-Eleven store on North
12 | Cahuenga Boulevard in Hollywood.  On April 28, 2008, at
13 | 2:15 p.m., he was the cashier.  A customer, Bobby Todd,
14 | requested a cup of ice.  When Kim told him it cost 50 cents,
15 | Todd said he only had a quarter, which he threw on the
16 | counter.  Kim replied that he could go to another store.
17 | Todd grabbed the coin, swore at Kim, and left the store
18 | slamming the front door on his way out and walked across the
19 | street.  Kim did not realize Todd had broken the glass door,
20 | but discovered the damage shortly afterwards.

21 |

22 |      Kim was busy at the register and did not call the
23 | police, but he saw Todd across the street.  Approximately 30
24 | minutes later, when the store was less busy, Kim went across
25 | the street to confront Todd, leaving employee Braulio Rubio
26 | in charge.  Kim told Todd that he had broken the window.
27 | Todd denied it.  As they spoke, Kim noticed that defendant
28 | was sitting down and playing guitar on an abandoned couch on

1     the sidewalk, just behind Todd.  Kim insisted that Todd had

2     broken the window.  When Kim said he intended to call the

3     police, defendant stood up and punched Kim in the face.

4     Todd punched him several times in the head and face.  Kim

5     tried to block the punches, but never fought back.  When Kim

6     tried to run away, Todd pushed him to the ground.  While Kim

7     was facing the ground, Todd choked him from behind and bit

8     his right ear.  Kim felt someone kick him on his side.

9

10     Kim managed to escape and received help from a passing

11     motorist, who drove him back to the 7-Eleven.  Kim entered

12     the store and called the police.  Defendant was across the

13     street on the couch, playing the guitar.  Kim had received

14     injuries to his face and pain in his side, along with a

15     severe headache and bruises on his hands and knees.

16

17     Alphy Hoffman was at the corner of Yucca and Cahuenga

18     at the time of the incident.  When Hoffman first noticed the

19     disturbance, he saw defendant and another male hitting and

20     kicking Kim, who was on the ground.  Defendant kicked Kim

21     several times.  The incident lasted approximately 10

22     minutes. Hoffman reported the incident to the 911 operator

23     as it happened.  At one point, when a bus pulled up, Hoffman

24     lost sight of defendant.  On cross-examination, Hoffman

25     testified that Cahuenga Boulevard was typically busy in

26     terms of traffic at that hour.  He viewed the incident from

27     across Cahuenga; his view was slightly obstructed by passing

28     vehicles.

4

1    Officer Othar Richey of the Los Angeles Police

2    Department responded to the scene.  He saw the abrasions to

3    Kim's face above the left eye, as well as those to his hand

4    and knee.  He also saw the broken door or window at the

5    7-Eleven.  Neither Todd nor defendant was injured.

6

7    **Defense**

8

9    Rubio was working at the 7-Eleven at the time of the

10   incident.  He heard the door slam and saw the glass had been

11   broken.  Some five minutes later, Kim went outside to

12   confront the person who broke it.  Rubio did not see the

13   altercation.  Investigator Dean Deruise interviewed Rubio,

14   who told him that when Rubio wanted to call the 7-Eleven

15   corporate office to report the vandalism, Kim told Rubio to

16   wait and give Kim "a couple of minutes."

17

18   Hyun Joe was one of the owners of the 7-Eleven.  Kim

19   did not tell him who broke the window, but it had been

20   replaced.  Kim did not speak to him about the incident.

21

22   Officer Juan Corona testified that defendant and Todd

23   offered no resistance to arrest.  They seemed angry, but

24   were not argumentative.  Kim told the officer that Todd had

25   broken the store window.

26

27   (Respondent's Lodgment 4, pp. 2-4; see People v. Green, 2010 WL

28   2220062, at *1-2).

5

**PETITIONER'S CONTENTIONS**

Petitioner contends:

1.   The trial court's asserted failure to obtain a waiver of Petitioner's right to counsel prior to sentencing allegedly violated the Sixth Amendment;

2.   The trial court allegedly violated due process by denying Petitioner's request for ancillary funds to hire an eyewitness expert; and

3.   The trial court's denial of Petitioner's motion to sever allegedly violated Petitioner's constitutional rights.

**STANDARD OF REVIEW**

Under the "Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA"), a federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v.

1 <u>Packer</u>, 537 U.S. 3, 8 (2002); <u>Williams v. Taylor</u>, 529 U.S. 362, 405-09

2 (2000).

3

4     "Clearly established Federal law" refers to the governing legal

5 principle or principles set forth by the Supreme Court at the time the

6 state court renders its decision. <u>Lockyer v. Andrade</u>, 538 U.S. 63

7 (2003). A state court's decision is "contrary to" clearly established

8 Federal law if: (1) it applies a rule that contradicts governing

9 Supreme Court law; or (2) it "confronts a set of facts. . . materially

10 indistinguishable" from a decision of the Supreme Court but reaches a

11 different result. See <u>Early v. Packer</u>, 537 U.S. at 8 (citation

12 omitted); <u>Williams v. Taylor</u>, 529 U.S. at 405-06.

13

14     Under the "unreasonable application prong" of section 2254(d)(1),

15 a federal court may grant habeas relief "based on the application of a

16 governing legal principle to a set of facts different from those of

17 the case in which the principle was announced." <u>Lockyer v. Andrade</u>,

18 538 U.S. at 76 (citation omitted); see also <u>Woodford v. Visciotti</u>, 537

19 U.S. at 24-26 (state court decision "involves an unreasonable

20 application" of clearly established federal law if it identifies the

21 correct governing Supreme Court law but unreasonably applies the law

22 to the facts). A state court's decision "involves an unreasonable

23 application of [Supreme Court] precedent if the state court either

24 unreasonably extends a legal principle from [Supreme Court] precedent

25 to a new context where it should not apply, or unreasonably refuses to

26 extend that principle to a new context where it should apply."

27 <u>Williams v. Taylor</u>, 529 U.S. at 407 (citation omitted).

28 ///

1      "In order for a federal court to find a state court's application

2  of [Supreme Court] precedent 'unreasonable,' the state court's

3  decision must have been more than incorrect or erroneous." <u>Wiggins v.</u>

4  <u>Smith</u>, 539 U.S. 510, 520 (2003) (citation omitted).   "The state

5  court's application must have been 'objectively unreasonable.'"   <u>Id.</u>

6  at 520-21 (citation omitted); <u>see also</u> <u>Waddington v. Sarausad</u>, 555

7  U.S. 179, 129 S. Ct. 823, 831 (2009); <u>Davis v. Woodford</u>, 384 F.3d 628,

8  637-38 (9th Cir. 2004), <u>cert. dism'd</u>, 545 U.S. 1165 (2005).   "Under §

9  2254(d), a habeas court must determine what arguments or theories

10  supported, . . . or could have supported, the state court's decision;

11  and then it must ask whether it is possible fairminded jurists could

12  disagree that those arguments or theories are inconsistent with the

13  holding in a prior decision of this Court." <u>Harrington v. Richter</u>,

14  131 S. Ct. 770, 786 (2011).   This is "the only question that matters

15  under § 2254(d)(1)."   <u>Id.</u> (citation and internal quotations omitted).

16  Habeas relief may not issue unless "there is no possibility fairminded

17  jurists could disagree that the state court's decision conflicts with

18  [the United States Supreme Court's] precedents."   <u>Id.</u> at 786-87 ("As a

19  condition for obtaining habeas corpus from a federal court, a state

20  prisoner must show that the state court's ruling on the claim being

21  presented in federal court was so lacking in justification that there

22  was an error well understood and comprehended in existing law beyond

23  any possibility for fairminded disagreement.").

24

25      In applying these standards, the Court looks to the last reasoned

26  state court decision, here the decision of the California Court of

27  Appeal.   <u>See</u> <u>DeWeaver v. Runnels</u>, 556 F.3d 995, 997 (9th Cir. 2009),

28  <u>cert. denied</u>, 130 S. Ct. 183 (2009).

Additionally, federal habeas corpus relief may be granted "only on the ground that [Petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In conducting habeas review, a court may determine the issue of whether the petition satisfies section 2254(a) prior to, or in lieu of, applying the standard of review set forth in section 2254(d).  Frantz v. Hazey, 533 F.3d 724, 736-37 (9th Cir. 2008) (en banc).

## DISCUSSION

**I.  Petitioner's Claim that the Trial Court Violated the Sixth Amendment By Allegedly Failing to Obtain a Waiver of Petitioner's Right to Counsel at Sentencing Does Not Merit Habeas Relief.**

### A.  Background

Petitioner initially was represented by a deputy public defender (see R.T. A-1; C.T. 48).  On July 1, 2008, the court heard and denied Petitioner's motion to substitute counsel (R.T. A-1 - A-2; R.T. 49).  Subsequently, Petitioner's counsel advised the court that Petitioner wished to represent himself (R.T. A-15).  The court said it would give Petitioner a form to fill out,[3] adding: "[t]he only thing I'll tell you in advance is I have seen almost nobody who's pro per, with [sic] exception of one or two exceptional people, do justice to themselves" (R.T. A-15).  The court told Petitioner:

///

---

[3]   The record does not contain this form.

1                I've had a couple of defendants I just sent out

2                for trial who are pro per.  And they're making an

3                absolute mess of their cases.  They're bright

4                guys, but they don't know the law, and they don't

5                know what they're doing.

6

7                We'll give you the form.  We'll bring you

8                back tomorrow.  Think about what I'm saying

9                because, no matter how bright you are, if you

10              don't know the procedures, you can really mess

11              things up.

12

13  (R.T. A-15 - A-16).  Petitioner said he understood (R.T. A-16).

14

15     On July 2, 2008, the court granted Petitioner's request to

16  represent himself (R.T. B-8; C.T. 51).  Prior to granting the request,

17  the court ascertained from Petitioner that Petitioner had filled out

18  and signed a waiver form, and that Petitioner had read and understood

19  the form (R.T. B-2).  The court advised Petitioner that he had the

20  right to counsel, including the right to have an attorney appointed

21  for him if he could not afford an attorney (R.T. B-2).  Petitioner

22  confirmed that he understood and that he wanted to give up his right

23  to an attorney (R.T. B-2).  Petitioner confirmed that he understood

24  the charges and the possible penalties (R.T. B-7).  Petitioner said he

25  had attended UCLA and needed only two more classes to obtain a B.A.

26  (R.T. B-4).  Petitioner confirmed that he understood his rights to a

27  speedy trial, to a jury trial, to cross-examine and confront

28  witnesses, to remain silent, and to bail (R.T. B-2 - B-3).  The court

1  told Petitioner that, if Petitioner represented himself, Petitioner

2  would have to follow "all the technical and substantive rules of law,"

3  and that Petitioner would not receive "any leeway" because he was

4  representing himself (R.T. B-4).   The court advised Petitioner that,

5  by representing himself, Petitioner would be taking the chance that he

6  would not be able to litigate a claim properly, and that Petitioner

7  could not challenge on appeal his own ineffectiveness (R.T. B-4).   The

8  court advised Petitioner that he would be held to the same standards

9  as an attorney at trial in doing things such as making motions,

10  selecting a jury, giving opening and closing statements, conducting

11  cross-examination, preparing and presenting jury instructions, making

12  post-verdict motions, and presenting arguments at sentencing, and

13  would not receive any help (R.T. B-5 - B-6).   The court said

14  Petitioner had to "do it competently, or . . . suffer the

15  consequences" (R.T. B-6).   The court told Petitioner that his

16  custodial status would impede Petitioner, and that his movement in the

17  courtroom would be limited in front of the jury (R.T. B-6 - B-7).

18  Finally, the court reminded Petitioner of the adage that a man who

19  represents himself has a fool for a client, and advised Petitioner

20  that it was a "very serious mistake" to represent himself (R.T. B-7 -

21  B-8).   Petitioner confirmed that he understood, and that he

22  nevertheless wanted to represent himself (R.T. B-8).   The court

23  granted Petitioner pro per status and relieved the deputy public

24  defender (R.T. B-8; C.T. 51-52).

25

26      Thereafter, Petitioner represented himself at trial and filed a

27  number of pro per motions, including a motion to compel discovery, a

28  motion to set aside the Information pursuant to California Penal Code

11

1  section 995, and a motion for funds to secure an expert witness (C.T.
2  57-61, 63-73, 81-86).

3

4   On August 22, 2008, after the jury rendered its verdict,
5  Petitioner asked whether he could maintain his <u>pro per</u> status (R.T.
6  272).  The court said: "Of course.  You've got it until you give it
7  up." (R.T. 272).  Petitioner agreed to a continuance to September 5,
8  2008 for the trial of the prior conviction allegations and sentencing
9  (R.T. 272).  The following occurred:

10

11    [Petitioner]:  . . . Actually, can I give up my pro per
12    status right now and be assigned counsel for appeal or
13    counsel for sentencing and then when I intend to file an
14    appeal?

15

16    The Court:  Did you have the public defender before?

17

18    [Petitioner]:  Yes . . .

19

20    The Court:  You can do it with one understanding, which
21    is I don't want you going back and forth.  You're done.

22

23    [Petitioner]:  Yes.

24

25    The Court:  Okay.  Yes, you can give up your pro per
26    status.  The public defender is reappointed on this case.

27

28  (R.T. 272-73).  The court asked the prosecutor to contact the public

1  defender's office and set the next proceeding for August 27, 2008

2  (R.T. 273).  The minute order for August 22, 2008 states, <u>inter alia</u>:

3  "The defendant gives up his right to pro per status.  The matter is

4  continued to August 27, 2008 at 8:30 a.m. in this department for

5  appointment of the public defender's office" (C.T. 105).  However, on

6  August 27, 2008, no one appeared from the public defender's office,

7  and the court continued the matter to September 3, 2008 (C.T. 150).

8

9       On September 3, 2008, Petitioner appeared, represented by his

10  former public defender (R.T. 277).  The court asked Petitioner if he

11  wanted to represent himself again (R.T. 277).  Petitioner said: "Yes,

12  sir.  I didn't understand that anything was finalized as far as giving

13  up my status, and I would like to continue in pro per" (R.T. 277).

14  Petitioner said he had several motions he wanted to file (R.T. 278).

15  The following occurred:

16

17       The Court:  Wait.  Wait.  Wait.  One second.  Okay.

18       You did give up your pro per status.  The public defender

19       was appointed; and, [Petitioner's counsel], the public

20       defender's office hasn't done anything yet to prepare for

21       this; is that correct?

22

23       [Petitioner's counsel]:  No.  We requested our closed

24       file which we have not received yet.  And we have not

25       prepared otherwise.

26

27       The Court:  Okay.  All right.  Public defender's office

28       is again relieved, and I'll let you represent yourself for

13

1    the rest of the case, Mr. Green.

2

3    (R.T. 278).   Immediately thereafter, Petitioner filed the following

4    pro per motions: (1) a motion for a continuance, bearing a signature

5    date of August 25, 2008; (2) a motion for ancillary services and

6    funds, bearing a signature date of August 27, 2008; (3) a motion for

7    transcripts, bearing a signature date of August 27, 2008; and (4) a

8    motion to dismiss on speedy trial grounds, bearing a signature date of

9    September 1, 2008 (R.T. 278-79; C.T. 153-71).[4]   Petitioner represented

10   himself for the remainder of the proceedings, including sentencing.

11

12        Petitioner contends the trial court erred by failing to obtain

13   another waiver of Petitioner's right to counsel at sentencing, as

14   purportedly required by Faretta v. California, 422 U.S. 806 (1975)

15   ("Faretta") (Pet. Supp., pp. 34-39).   The Court of Appeal rejected

16   this contention, ruling that no California or federal law supported

17   Petitioner's claim (Respondent's Lodgment 4, pp. 10-14; see People v.

18   Green, 2010 WL 2220062, at *7-8).   The Court of Appeal indicated that

19   readvisement was "particularly unnecessary" in Petitioner's case,

20   because Petitioner's request for reassignment of counsel was

21   "obviously made with full knowledge of his constitutional right to

22   counsel" (Respondent's Lodgment 4, p. 13; see People v. Green, 2010 WL

23   2220062, at *8).   The Court of Appeal also stated that Petitioner had

24   failed to show how the trial court's failure to give a second set of

25   Faretta advisements prejudiced Petitioner (Respondent's Lodgment 4,

26   _____

27        [4]    The signature dates of these motions indicate that
     Petitioner prepared and signed them prior to the September 3,
28   2008 court proceeding.

14

1 | pp. 13-14; see People v. Green, 2010 WL 2220062, at *8).

2

3 | **B.   Discussion**

4

5 |     A criminal defendant is constitutionally entitled to waive his or

6 | her Sixth Amendment right to counsel and to represent himself or

7 | herself at trial, as long as the defendant's waiver of counsel is

8 | knowing and intelligent.  Faretta, 422 U.S. at 820-21, 835.  "A waiver

9 | of counsel will be considered knowing and intelligent only if the

10 | defendant is made aware of (1) the nature of the charges against him;

11 | (2) the possible penalties; and (3) the dangers and disadvantages of

12 | self-representation . . . ."  United States v. Farhad, 190 F.3d 1097,

13 | 1099 (9th Cir. 1999), cert. denied, 529 U.S. 1023 (2000); see also

14 | Faretta, 422 U.S. at 835 (a defendant wishing to proceed in propria

15 | persona "should be made aware of the dangers and disadvantages of

16 | self-representation, so that the record will establish that he knows

17 | what he is doing and his choice is made with eyes open") (citation and

18 | quotations omitted).

19

20 |     However, "[n]either the Constitution nor Faretta compels the

21 | [court] to engage in a specific colloquy with the defendant."  Lopez

22 | v. Thompson, 202 F.3d 1110, 1117-19 (9th Cir.), cert. denied, 531 U.S.

23 | 883 (2000) (Faretta "mandated no specific litany or formula to ensure

24 | that waivers of counsel are knowing and intelligent").  The court may

25 | examine the record as a whole to determine if the trial court made the

26 | defendant aware of the dangers and disadvantages of self-

27 | representation.  Id. at 1117; see also Edwards v. Arizona, 451 U.S.

28 | 477, 482 (1981) (determination that a waiver was knowingly and

1 intelligently made "depends in each case upon the particular facts and
2 circumstances surrounding that case, including the background,
3 experience, and conduct of the accused"; citations and quotations
4 omitted); McCormick v. Adams, 621 F.3d 970, 979 (9th Cir. 2010) ("a
5 defective waiver colloquy will not necessitate automatic reversal when
6 the record as a whole reveals a knowing and intelligent waiver")
7 (citation and internal quotations omitted).  "In assessing waiver of
8 counsel, the trial judge is required to focus on the defendant's
9 understanding of the importance of counsel, not the defendant's
10 understanding of the substantive law or the procedural details."
11 Lopez v. Thompson, 202 F.3d at 1119.  The court must "focus on what
12 the defendant understood, rather than on what the court said or
13 understood."  McCormick v. Adams, 621 F.3d at 976 (citation and
14 internal quotations omitted).

15

16       Petitioner does not dispute that the trial court's initial
17 advisements were adequate, and that Petitioner's initial waiver of
18 counsel was knowing and intelligent.  Rather, Petitioner argues that
19 the trial court was required to provide Faretta readvisements at the
20 time Petitioner reasserted his Faretta right on September 3, 2008
21 (Pet. Supp., pp. 34-39).  Petitioner relies on dicta in Arnold v.
22 United States, 414 F.2d 1056, 1059 (9th Cir. 1969), cert. denied, 396
23 U.S. 1021 (1970).[5]
24 ///

25 ────────────────

26       [5]    To the extent Petitioner contends the trial court's
   failure to give Faretta readvisements violated state law,
27 Petitioner is not entitled to habeas relief.  See Estelle v.
   McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a).
28

1    The <u>Arnold</u> decision does not aid Petitioner.  In that case, the

2   Ninth Circuit rejected the defendant's argument that his knowing and

3   voluntary waiver of counsel at trial did not extend to sentencing

4   proceedings.   <u>Arnold v. United States</u>, 414 F.2d at 1059.   The court

5   held that, "[w]hile it is true that the Sixth Amendment right to

6   counsel applies at all critical stages of the prosecution, including

7   the sentencing stage, it does not follow that once the assistance of

8   counsel in court has been competently waived, a new waiver must be

9   obtained at every subsequent court appearance by the defendant."  <u>Id.</u>

10   The <u>Arnold</u> Court stated that a <u>Faretta</u> waiver is effective for all

11   further proceedings in the case "unless appointment of counsel for

12   subsequent proceedings is expressly requested by the defendant or

13   there are circumstances which suggest that the waiver was limited to a

14   particular stage of the proceedings."  <u>Id.</u>  Nothing in the record

15   shows that Petitioner's initial waiver of counsel was limited to trial

16   and did not extend to post-verdict proceedings and sentencing.

17   Although Petitioner asked the court whether he could give up his <u>pro</u>

18   <u>per</u> status, Petitioner arguably never made any express request for the

19   reappointment of counsel.  Rather, the trial court answered

20   Petitioner's question and then apparently inferred a request by

21   Petitioner to "give up . . . pro per status."  In any event, the cited

22   dicta in the <u>Arnold</u> decision does not represent "clearly established

23   Federal law, as determined by the Supreme Court of the United States,"

24   within the meaning of 28 U.S.C. section 2254(d).

25

26    "A properly conducted <u>Faretta</u> colloquy need not be renewed in

27   subsequent proceedings unless intervening events substantially change

28   the circumstances existing at the time of the initial colloquy."

1  United States v. Hantzis, 625 F.3d 575, 580-81 (9th Cir. 2010), cert.

2  denied, 131 S. Ct. 2133 (2011). "The essential inquiry is whether

3  circumstances have sufficiently changed since the date of the Faretta

4  inquiry that the defendant can no longer be considered to have

5  knowingly and intelligently waived the right to counsel." Id. at 581;

6  see also McCormick v. Adams, 621 F.3d at 979. "[T]he Sixth Amendment

7  does not require a new colloquy to inform the defendant of the risks

8  and difficulties of pro se representation where it is discernable in

9  the record that the defendant was made well aware of those risks and

10 difficulties." United States v. Bisong, 645 F.3d 384, 2011 WL

11 1900736, at *10 (D.C. Cir. May 20, 2011).

12

13      Here, the intervening circumstance between the original waiver of

14 counsel on July 2, 2008 and the renewed waiver on September 3, 2008

15 consisted of Petitioner's temporary relinquishment of his Faretta

16 right on August 22, 2008. Nothing in the record shows that

17 Petitioner's temporary relinquishment of his Faretta right from

18 August 22, 2008 to September 3, 2008 vitiated his understanding of the

19 charge (of which, by September 3, 2008, he had been convicted), the

20 possible penalty, or the dangers and disadvantages of self-

21 representation. Furthermore, the record reflects that Petitioner did

22 not perceive the temporary relinquishment of his Faretta right as a

23 significant event. To the contrary, Petitioner stated at the

24 September 3, 2008 proceeding that he had not understand that his

25 relinquishment of his pro per status had been "finalized" (R.T. 277).

26 Petitioner authored and signed four pro per motions during the period

27 of his temporary relinquishment of his pro per status. In such

28 circumstances, Petitioner has failed to show that his renewed waiver

18

1  of counsel on September 3, 2008 was not knowing and intelligent.  <u>See</u>

2  <u>United States v. Bisong</u>, 2011 WL 1900736, at *8-10 (rejecting argument

3  that waiver of counsel was not knowing and intelligent, where several

4  months passed after the <u>Faretta</u> colloquy before the court granted the

5  <u>Faretta</u> request, during which period Petitioner was represented by

6  counsel); <u>United States v. Modena</u>, 302 F.3d 626, 630-31 (6th Cir.

7  2002), <u>cert. denied</u>, 537 U.S. 1145 (2003) (where defendant initially

8  elected to waive counsel following <u>Faretta</u> advisements, later

9  requested counsel, but thereafter withdrew his request for counsel,

10 defendant's "interim change of heart" regarding his initial decision

11 to proceed <u>pro se</u> did not necessitate a new waiver-of-counsel

12 hearing).

13

14       In his Traverse, Petitioner quotes a dissenting opinion in a

15 capital case, <u>Grandison v. Maryland</u>, 479 U.S. 873, 875 (1986), for the

16 propositions that a sentencing hearing assertedly is "like a separate

17 trial" and that a waiver of counsel at the guilt phase of a trial

18 assertedly has no bearing on the right to counsel at the sentencing

19 phase (Traverse, p. 6).  Petitioner alleges: "Where the sentencing

20 court promised him a lawyer for the sentencing phase of the case: it

21 was a violation of Petitioner's Sixth Amendment right" (Traverse,

22 p. 6).

23

24       The record belies any claim that the court "promised" Petitioner

25 an attorney for sentencing proceedings.  The record contains no such

26 promise and clearly shows that Petitioner expressly chose to represent

27

28

                                    19

1   himself at sentencing.[6]

2

3       In any event, any such claim is foreclosed by the holding of

4   John-Charles v. California, ___ F.3d ___, 2011 WL 2937945, at *5-6

5   (9th Cir. July 22, 2011).  In that case, the trial court granted the

6   petitioner's request to represent himself.  Id. at *1.  The petitioner

7   later sought reappointment of counsel three times: on the day set for

8   trial, the day that the prosecution filed an amended information

9   alleging a "strike" under California's Three Strikes Law, and the day

10  following the commencement of jury selection.  Id. at *1-2.  The court

11  denied all three requests.  Id. at *1-2.  The Ninth Circuit held the

12  petitioner was not entitled to habeas relief, reasoning that: (1) no

13  Supreme Court case provided any "tailored guidance" concerning the

14  issue; (2) a "fairminded jurist" could agree that Faretta and Gideon

15  v. Wainwright, 372 U.S. 335 (1963), did not require reappointment of

16  counsel after an initial waiver of the right; and (3) the conclusion

17  that the Sixth Amendment right to counsel is not absolute once it has

18  been waived was consistent with the decisions of four other circuits.

19  Id. at *5-6 (citations omitted).[7]

20  ///

21  _____

22      [6]   Although any such claim appears to be unexhausted, the
    Court may deny on the merits an unexhausted claim which is not
23  "colorable."  See Cassett v. Stewart, 406 F.3d 614, 623-24 (9th
    Cir. 2005), cert. denied, 546 U.S. 1172 (2006); 28 U.S.C. §
24  2254(b)(2).  For the reasons discussed herein, any such claim is
    not "colorable."
25

26      [7]   Petitioner's reliance on a dissenting opinion in a
    Supreme Court case is plainly unavailing.  See United States v.
27  Ameline, 409 F.3d 1073, 1083 n.5 (9th Cir. 2005) (en banc)
    (Supreme Court dissenting opinions "of course[] are not
28  precedential").

1    For the foregoing reasons, the Court of Appeal's rejection of

2  Petitioner's <u>Faretta</u> claim was not contrary to, or an objectively

3  unreasonable application of, any clearly established Federal law as

4  determined by the United States Supreme Court. <u>See</u> 28 U.S.C. §

5  2254(d); <u>Harrington v. Richter</u>, 131 S. Ct. at 785-87. Petitioner is

6  not entitled to habeas relief on this claim.

7

8  **II.  <u>The Trial Court's Denial of Petitioner's Request for Ancillary</u>**

9      **<u>Funds to Hire an Eyewitness Expert Does Not Merit Habeas Relief.</u>**

10

11    **A.  <u>Background</u>**

12

13    Prior to trial, Petitioner filed a motion for ancillary funds to

14  secure the services of an "eyewitness expert/crime scene analist

15  [sic]" (C.T. 81-86). Petitioner allegedly desired the services of

16  such an expert to attack Hoffman's ability to perceive the incident

17  (C.T. 82). At the hearing on the motion, the court asked Petitioner:

18  "Is this a case where you're claiming it's not you, that they got the

19  wrong guy?" (R.T. F-1). Petitioner said: "No, sir" (R.T. F-1).

20  Petitioner said that he wanted the expert "to question the witness'

21  ability to perceive from his location" and to examine whether the

22  witness's testimony might have been based on the witness' alleged

23  "expectation[]" of seeing a fight (R.T. F-2). The court asked

24  Petitioner what the expert would say (R.T. F-2). Petitioner

25  responded: "Okay. I believe it's a matter of common knowledge that

26  witnesses are often fallible in giving testimony" (R.T. F-2). The

27  court responded that experts did not testify about the things

28  Petitioner had described, but rather testified concerning eyewitness

1  identification mistakes (R.T. F-2).  Petitioner said that, because he

2  and Todd had been dressed alike, Hoffman could have had a problem

3  identifying "who did what" (R.T. F-2 - F-3).  The court said: "There's

4  not an issue one of those two people is you?" (R.T. F-3).  Petitioner

5  said: "No" (R.T. F-3).  The court denied the motion (R.T. F-3; C.T.

6  87).

7

8       The Court of Appeal upheld the trial court's decision

9  (Respondent's Lodgment 4, pp. 4-7; see People v. Green, 2010 WL

10  2220062, at *3-4).  The Court of Appeal stated that, under Ake v.

11  Oklahoma, 470 U.S. 68 (1985) ("Ake"), the Constitution does not

12  require a state to provide an indigent defendant with "'all the

13  assistance that his wealthier counterpart might buy.'" (Respondent's

14  Lodgment 4, p. 6; see People v. Green, 2010 WL 2220062, at *3 (quoting

15  Ake, 470 U.S. at 77).  The Court of Appeal ruled that Petitioner had

16  not "offered any credible basis to think an eyewitness expert would

17  have brought any helpful specialized insight to bear on the question

18  of Hoffman's ability to place [Petitioner] at the scene as one of the

19  two assailants" (Respondent's Lodgment 4, p. 6; see People v. Green,

20  2010 WL 2220062, at *4).  Noting that Petitioner did not assert a

21  mistaken identity defense, the Court of Appeal observed that Hoffman's

22  testimony established that Hoffman did not see how the confrontation

23  began, had viewed the altercation from across a busy, multi-lane

24  street, and had admitted his view was partially impaired by traffic

25  and completely blocked by a bus at one time (Respondent's Lodgment 4,

26  p. 6; see People v. Green, 2010 WL 2220062, at *4).  The Court of

27  Appeal concluded that Petitioner had not shown that the proposed

28  expert testimony would have made a difference at trial, because

                                   22

1  Petitioner had not shown what exculpatory inferences could have been
2  drawn had the expert testified (Respondent's Lodgment 4, p. 7; see
3  People v. Green, 2010 WL 2220062, at *4).

4

5      **B.   Discussion**

6

7      In limited circumstances, the exclusion of crucial evidence may
8  violate the Constitution.  See Holmes v. South Carolina, 547 U.S. 319,
9  319 (2006) ("[w]hether rooted directly in the Due Process Clause of
10 the Fourteenth Amendment, or in the Compulsory Process or
11 Confrontation clauses of the Sixth Amendment, the Constitution
12 guarantees criminal defendants a meaningful opportunity to present a
13 complete defense") (citations and internal quotations omitted);
14 Chambers v. Mississippi, 410 U.S. 284, 302 (1973) ("Chambers"); Chia
15 v. Cambra, 360 F.3d 997, 1003 (9th Cir. 2004), cert. denied, 544 U.S.
16 919 (2005) ("The Supreme Court has made it clear that the erroneous
17 exclusion of critical, corroborative defense evidence may violate both
18 the Fifth Amendment due process right to a fair trial and the Sixth
19 Amendment right to present a defense.") (citations and internal
20 quotations omitted).

21

22     However, "Chambers . . . does not stand for the proposition that
23 the defendant is denied a fair opportunity to defend himself whenever
24 a state . . . rule excludes favorable evidence."  United States v.
25 Scheffer, 523 U.S. 303, 316 (1998).  "While the Constitution . . .
26 prohibits the exclusion of defense evidence under rules that serve no
27 legitimate purpose or that are disproportionate to the ends that they
28 are asserted to promote, well-established rules of evidence permit

23

1  trial judges to exclude evidence if its probative value is outweighed

2  by certain other factors such as unfair prejudice, confusion of the

3  issues, or potential to mislead the jury." Holmes v. South Carolina,

4  547 U.S. at 320 (citations omitted); see also Moses v. Payne, 555 F.3d

5  742, 758 (9th Cir. 2009).  Thus, "the Constitution permits judges to

6  exclude evidence that is repetitive . . . , only marginally relevant

7  or poses an undue risk of harassment, prejudice or confusion of the

8  issues." Holmes v. South Carolina, 547 U.S. at 326-27 (citations,

9  internal brackets and quotations omitted).

10

11       In California, a trial court "has broad discretion in determining

12  whether to admit or exclude expert testimony . . . ." People v.

13  Manning, 165 Cal. App. 4th 870, 81 Cal. Rptr. 3d 452 (2008) (citation

14  omitted); see also People v. Richardson, 43 Cal. 4th 959, 1008, 77

15  Cal. Rptr. 3d 163, 183 P.3d 1146 (2008), cert. denied, 129 S. Ct. 1316

16  (2009) (court may exclude expert testimony where its probative value

17  is outweighed substantially by the risk of undue delay, prejudice or

18  confusion).  The United States Supreme Court has not squarely

19  addressed the issue of whether or when an evidentiary rule that

20  requires a trial court to "balance factors and exercise its

21  discretion" might violate a defendant's due process right to present a

22  defense.  See Moses v. Payne, 555 F.3d at 758; see also Brown v.

23  Horell, 644 F.3d 969 (9th Cir. 2011).  Rather, the Supreme Court cases

24  have "focused only on whether an evidentiary rule, by its own terms,

25  violated a defendant's right to present evidence[,]" not whether a

26  court's exercise of discretion in excluding evidence violates that

27  right.  Moses v. Payne, 555 F.3d at 758.  Petitioner does not contend,

28  and the record does not show, that the trial court applied any state

1  evidentiary rule which "by its own terms" required exclusion.   Thus,

2  federal habeas relief is unavailable because no clearly established

3  Supreme Court law supports Petitioner's claim.   See id.; Brown v.

4  Horell, 644 F.3d 969 (9th Cir. 2011) ("[b]etween the issuance of Moses

5  and the present, the Supreme Court has not decided any case either

6  'squarely addressing' the discretionary exclusion of evidence and the

7  right to present a complete defense or 'establishing a controlling

8  legal standard' for evaluating such exclusions"; discretionary

9  exclusion of expert testimony concerning interrogation methods did not

10 warrant habeas relief) (brackets omitted); see also 28 U.S.C. §

11 2254(d); Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419

12 (2009) ("it is not an unreasonable application of clearly established

13 Federal law for a state court to decline to apply a specific legal

14 rule that has not been squarely established by this Court") (citations

15 omitted); Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our

16 cases give no clear answer to the question presented, . . . it cannot

17 be said that the state court unreasonably applied clearly established

18 Federal law") (citation, internal brackets and quotations omitted).

19

20       Additionally, although a California court has discretion to

21 appoint an eyewitness expert to assist an indigent defendant, see

22 People v. McDonald, 37 Cal. 3d 351, 377, 208 Cal. Rptr. 236, 690 P.2d

23 709 (1984), overruled on other grounds, People v. Mendoza, 23 Cal. 4th

24 896, 914, 98 Cal. Rptr. 2d 431, 446, 4 P.3d 265 (2000), nothing in the

25 Constitution mandates such an appointment.   Although the Constitution

26 may require the appointment of a psychiatric expert at state expense

27 in a capital case where the defendant's sanity is likely to be an

28 issue, see Ake v. Oklahoma, 470 U.S. 68, 74 (1985) ("Ake"), the

1  Supreme Court has declined to address the extent to which, if at all,

2  the Constitution requires the appointment of a non-psychiatric expert.

3  See Caldwell v. Mississippi, 472 U.S. 320, 323-24 n.1 (1985)

4  ("Caldwell") (declining "to determine as a matter of federal

5  constitutional law what if any showing would have entitled [the

6  petitioner]" to the appointment of fingerprint and ballistics experts,

7  where the petitioner "offered little more than undeveloped assertions

8  that the required assistance would be beneficial").  Hence, no

9  "clearly established" Supreme Court law requires the appointment of an

10  eyewitness expert or crime scene analyst.  See Jackson v. Ylst, 921

11  F.2d 882, 885-87 (9th Cir. 1990) (to hold unconstitutional a trial

12  court's denial of application for appointment of eyewitness expert

13  would constitute a "new rule," the retroactive application of which

14  would be barred by Teague v. Lane, 489 U.S. 288 (1989); California law

15  created no liberty interest in appointment of such an expert); see

16  also Weeks v. Angelone, 176 F.3d 249, 264-66 & n.9 (4th Cir. 1999),

17  aff'd on other grounds, 528 U.S. 225 (2000) (Ake and Caldwell do not

18  establish a criminal defendant's constitutional right to assistance of

19  non-psychiatric experts such as pathology and ballistics experts;

20  because defendant's claim was barred by Teague v. Lane, it

21  "necessarily follows" that claim also was barred by 28 U.S.C. section

22  2254(d)); Sanchez v. Hedgpeth, 706 F. Supp. 2d 963, 988-89 (C.D. Cal.

23  2010) ("the Supreme Court has declined to consider whether the Ake

24  holding extends beyond psychiatrists to other expert witnesses and

25  investigators"; citing Caldwell; denying habeas relief because "the

26  Supreme Court has not clearly established a constitutional right to

27  the appointment of forensic experts"); Griffin v. Howes, 2009 WL

28  211172 (E.D. Mich. Jan. 27, 2009) ("In light of the language of Ake

1  and the Supreme Court's reservation in <u>Caldwell</u>, there is disagreement

2  [in the Courts of Appeal] over whether <u>Ake</u> requires the provision of

3  expert services beyond psychiatric services necessary to present an

4  insanity defense"; asserted right to non-psychiatric expert not

5  "clearly established" within the meaning of 28 U.S.C. section

6  2254(d)(1) (citations omitted)).  Therefore, Petitioner is not

7  entitled to habeas relief on this claim.  <u>See</u> <u>Moses v. Payne</u>, 555 F.3d

8  742, 758-59 (9th Cir. 2009) (habeas relief unavailable where the

9  Supreme Court had articulated no "controlling legal standard" on the

10  issue); <u>Larson v. Palmateer</u>, 515 F.3d 1057, 1066 (9th Cir.), <u>cert.</u>

11  <u>denied</u>, 129 S. Ct. 171 (2008) (where Supreme Court "expressly left

12  [the] issue an 'open question,'" habeas relief unavailable).

13

14      In any event, the failure to appoint an eyewitness expert/crime

15  scene analyst did not deny Petitioner a fair trial.  Because

16  Petitioner conceded to the court that he was present at the incident

17  (<u>see</u> R.T. F-3), and did not advance a defense of mistaken identity,

18  there was no need for expert testimony on eyewitness identification.

19  <u>See</u> <u>Holmes v. South Carolina</u>, 547 U.S. at 326-27 (court may exclude

20  evidence that is "only marginally relevant or poses an undue risk of

21  harassment, prejudice or confusion of the issues.") (citations,

22  internal brackets and quotations omitted).  Furthermore, eyewitness

23  identification expert testimony "is strongly disfavored by most

24  courts."  <u>United States v. Labansat</u>, 94 F.3d 527, 530 (9th Cir. 1996),

25  <u>cert. denied</u>, 519 U.S. 1140 (1997) (citation and internal quotations

26  omitted).  "Any weaknesses in eyewitness identification testimony can

27  ordinarily be revealed by counsel's careful cross-examination of the

28  eyewitness."  <u>Id.</u> (citation and internal quotations omitted); <u>see also</u>

1   Howard v. Clark, 608 F.3d 563, 574 (9th Cir. 2010) ("we adhere to the

2   position that skillful cross examination of eyewitnesses, coupled with

3   appeals to the experience and common sense of jurors, will

4   sufficiently alert jurors to specific conditions that render a

5   particular eyewitness identification unreliable") (citations and

6   internal quotations omitted).

7

8       Petitioner appears to have desired to call an expert to testify

9   concerning the allegedly impaired view of the incident that a person

10  in Hoffman's position purportedly would have had.   On cross-

11  examination, however, Petitioner elicited Hoffman's testimony that:

12  (1) Hoffman assertedly had not seen the start of the fight; (2) when

13  Hoffman first observed the incident, Hoffman allegedly immediately

14  assumed it was a fight; and (3) Hoffman's view of the incident

15  reportedly was "slightly" obscured by vehicles, including a bus (R.T.

16  134, 137).   In these circumstances, Petitioner has not shown that this

17  cross-examination "was any less effective without the services of the

18  expert."   See United States v. Brewer, 783 F.2d 841, 843 (9th Cir.),

19  cert. denied, 479 U.S. 831 (1986) (citation and internal quotations

20  omitted).   Petitioner argued in closing that it was "common knowledge"

21  that "people sometimes don't see what they expect to see, and

22  Mr. Hoffman did say he thought it was a fight on first glance" (R.T.

23  245).   Therefore, the trial court's refusal to provide ancillary funds

24  for an eyewitness expert or crime scene analyst did not render

25  Petitioner's trial unfair or deny Petitioner the right to present a

26  defense.   See Holmes v. South Carolina, 547 U.S. at 326-27; Brown v.

27  Terhune, 158 F. Supp. 2d 1050, 1071 (N.D. Cal. 2001), aff'd, 59 Fed.

28  App'x 190 (9th Cir. 2003) (counsel not ineffective in failing to call

1  eyewitness identification expert, where counsel cross-examined

2  witnesses concerning identifications and emphasized alleged problems

3  with identifications in closing).

4

5      For the foregoing reasons, Petitioner is not entitled to habeas

6  relief on his claim that the trial court erred in denying Petitioner

7  funds to secure the services of an expert.

8

9  III. **The Denial of Petitioner's Motion to Sever Does Not Merit Habeas**

10     **Relief.**

11

12     A.    **Background**

13

14     Prior to trial, Petitioner's counsel moved to sever Petitioner's

15  trial from that of Todd (R.T. A-11).  At the July 1, 2008 hearing on

16  the motion, Petitioner's counsel argued that Todd could provide

17  allegedly exculpatory testimony for Petitioner (R.T. A-11 - A-12).

18  Counsel claimed that Todd had told Petitioner that Petitioner had

19  nothing to do with the incident, and that Todd would like to testify

20  for Petitioner (R.T. A-12, A-15).  The court said: "If Mr. Todd is

21  going to testify in Mr. Green's behalf, he can do that in a joint

22  trial.  If he's going to assert his Fifth Amendment right not to

23  testify, then there's no ground for severance." (R.T. A-13).

24  Petitioner's counsel stated that Todd would not testify in a joint

25  trial, and had indicated a willingness to accept a plea offer (R.T.

26  A-13).  The court said: "If he pleads out, I don't need to sever

27  anyway" (R.T. A-13).  The court denied the motion (R.T. A-14).

28  ///

1       On August 11, 2008 (after the court had granted Petitioner's

2 request for self-representation), Todd's attorney declared a conflict

3 (R.T. E-8). Another attorney from the bar panel appeared on Todd's

4 behalf, but indicated that he was "just standing in on behalf of the

5 bar panel" and was "not going to keep the case for [himself]" (R.T.

6 E-8). This attorney mentioned that the prosecutor had offered a

7 "package deal" to the defendants, whereby Todd would receive time

8 served and probation in exchange for a plea (R.T. E-12). The

9 prosecutor confirmed the offer was part of a package deal (R.T. E-13).

10 When the court mentioned an open plea,[8] the prosecutor requested that

11 the court not take an open plea, saying that, because Petitioner and

12 Todd had committed the crimes together, "it [made] sense to try them

13 as a unit rather than split them up" (R.T. E-13 - E-14). The court

14 indicated that if Todd sought an open plea, the court probably would

15 take the plea but delay sentence until Petitioner's trial concluded

16 (R.T. E-14). The court indicated that, if Todd testified and the

17 court felt the testimony was untruthful, Todd "would be in a much

18 different position than if he -- if he gave truthful testimony. . . ."

19 (R.T. E-14). The court said:

20

21           Whether he wants to testify or not is up to him,

22           and I wouldn't suggest he shouldn't if that's what

23           he chose to do. But I wouldn't sentence him

24           before he testifies. Then that decision is up to

25

26     ———————————————

27     [8]   "An open plea is a plea unconditioned upon receipt of a particular sentence or other exercise of the court's powers." People v. Conerly, 176 Cal. App. 4th 240, 245 n.1, 98 Cal. Rptr.

28 3d 76 (2009) (citations and internal quotations omitted).

1     him.

2

3     (R.T. E-14).  The court reiterated that it would sentence Todd "when

4     the trial is over" (R.T. E-15).  The bar panel attorney said that he,

5     the attorney, would advise Todd not to testify at Petitioner's trial

6     if Todd had pled but had not yet been sentenced (R.T. E-15).  The

7     court responded: "That's up to him.  Whether his 5th Amendment right

8     still applies or not, he could still choose to testify if he wanted

9     to" (R.T. E-15).

10

11    Todd entered a plea on August 15, 2008 (see R.T. 391, 474).  On

12    August 18, 2008, the prosecutor requested a hearing to determine

13    whether Todd was going to testify (R.T. 12).  The court said that,

14    because Todd had not yet been sentenced, Todd still could assert his

15    privilege against self-incrimination if he chose to do so (R.T. 13).

16

17    On August 19, 2008, the court held a hearing at which Todd

18    appeared, represented by counsel (R.T. 30).  Petitioner told the court

19    he wanted to call Todd as a witness (R.T. 30).  The court told Todd

20    that, because Todd had not yet been sentenced, Todd could not be

21    forced to testify (R.T. 30-31).  Todd's counsel reported that he had

22    advised Todd not to testify because it could affect Todd's pending

23    case, but confirmed that the decision was Todd's to make (R.T. 31).

24    The court reminded Todd that Todd's sentence could be affected if the

25    court determined that Todd lied in his testimony (R.T. 31).  The

26    prosecutor said the prosecution had not given Todd any immunity (R.T.

27    33).

28    ///

1    Todd told the court that he did not "have an exact memory" of

2  everything that had happened (R.T. 33).   Todd said: "So, you know,

3  memory-wise, I can't be accurate on that because I was in a mutual

4  combat with this other man, Mr. Kim.   So anything that happened in

5  that time -- I'm not really aware of what happened with him

6  [Petitioner] or aware of his whereabouts.   I was involved with

7  Mr. Kim." (R.T. 33-34).   Todd said: "If I wasn't aware of his

8  [Petitioner's] whereabouts during this activity that happened, then

9  how can I really be questioned?" (R.T. 34).   The court again asked

10  Todd what Todd wanted to do (R.T. 35).   Todd said: "Well, I can't

11  testify for something I have no whereabouts of.   This is testimony

12  based on Mr. Green's activity in this, and I have no memory of him in

13  that during that time when Mr. Kim approached or after he left."

14  (R.T. 35).   Asked again if Todd wanted to testify, Todd responded:

15  "No, I don't really.   I really don't." (R.T. 35).   Todd was then sworn

16  and asserted his Fifth Amendment privilege not to testify (R.T. 36-

17  37).

18

19    Later that day, out of the presence of jurors, Petitioner told

20  the court that he had talked to Todd in the "tank" and that Todd

21  allegedly said he was willing to testify (R.T. 44).   The court asked

22  Petitioner what Todd would say if Todd testified (R.T. 44).

23  Petitioner said Todd would testify that Petitioner's involvement was

24  "minimal at the very end of it" (R.T. 45).   Petitioner said he

25  expected Todd would say that Petitioner "acted to break up the

26  confrontation," and Petitioner argued that this purported testimony

27  would support Petitioner's defense of defense of another (R.T. 46-47).

28  The court told Petitioner that Petitioner could not mention Todd's

1   proposed testimony in opening statement (R.T. 47-48).

3        On August 20, 2008, the prosecution rested (R.T. 148).  The next
4   day, August 21, 2008, Todd and his counsel appeared at a conference
5   out of the presence of the jury (R.T. 152).  Todd again told the court
6   he would not testify (R.T. 153).

8        At a post-verdict hearing on Petitioner's speedy trial motion,
9   Petitioner attempted to elicit evidence concerning the motion to sever
10  (R.T. 340).  The court told Petitioner that the speedy trial motion
11  had nothing to do with the motion to sever (R.T. 340).  In connection
12  with the speedy trial motion, Petitioner testified that Todd had told
13  Petitioner that Todd would testify, and Todd testified that he told
14  Petitioner that he would testify after he signed the plea "deal" (R.T.
15  392, 589-90).  Petitioner also elicited the testimony of inmate
16  witnesses that Todd reportedly had expressed a willingness to testify
17  at Petitioner's trial (R.T. 369, 416).

19       Following the verdict, the court denied Petitioner's motion for a
20  new trial challenging, inter alia, the denial of the motion to sever
21  (R.T. 643-50; C.T. 334-35).  The court stated that the case "never was
22  appropriate for a severance" and that in any event there had been no
23  joint trial with Todd (R.T. 647).

25       The Court of Appeal rejected Petitioner's challenge to the trial
26  court's denial of the motion to sever (Respondent's Lodgment 4, pp. 7-
27  10; see People v. Green, 2010 WL 2220062, at *4-5).  The Court of
28  Appeal denied Petitioner's constitutional challenge to the trial

1 court's decision on the ground that Petitioner asserted that claim "in

2 perfunctory faction [sic] without adequate supporting authority"

3 (Respondent's Lodgment 4, p. 7; see People v. Green, 2010 WL 2220062,

4 at *4) (citations omitted). The Court of Appeal also ruled that, in

5 any event, Petitioner had not shown why severance was required or how

6 the denial of his severance motion prejudiced Petitioner (Respondent's

7 Lodgment 4, pp. 7-10; see People v. Green, 2010 WL 2220062, at *4-5).

8 The Court of Appeal deemed it "a matter of pure speculation whether

9 Todd would have testified if the trial had been ordered severed"

10 (Respondent's Lodgment 4, p. 10; see People v. Green, 2010 WL 2220062,

11 at *6). The Court of Appeal also said that, by pleading guilty, Todd

12 "effectively gave [Petitioner] a separate trial," although Todd

13 refused to testify at that trial (Respondent's Lodgment 4, p. 10; see

14 People v. Green, 2010 WL 2220062, at *6). The Court of Appeal also

15 concluded that, given Todd's statement that he did not recall what

16 Petitioner was doing during the incident, there was no reason to think

17 Todd's testimony would have aided Petitioner (Respondent's Lodgment 4,

18 p. 10; see People v. Green, 2010 WL 2220062, at *6).

19

20     B.    **Discussion**

21

22     Federal habeas corpus relief may be granted "only on the ground

23 that [Petitioner] is in custody in violation of the Constitution or

24 laws or treaties of the United States." 28 U.S.C. § 2254(a). The

25 improper joinder of defendants does not violate the Constitution

26 unless "it results in prejudice so great as to deny a defendant his

27 Fifth Amendment right to a fair trial." United States v. Lane, 474

28 U.S. 438, 446 n.8 (1986). When reviewing a trial court's denial of a

1    motion to sever, "[t]he question presented in a state prisoner's

2    petition for writ of habeas corpus is whether the state proceedings

3    satisfied due process.   To prevail, [petitioner] bears the burden of

4    demonstrating that the state court's denial of his severance motion

5    rendered his trial fundamentally unfair." Grisby v. Blodgett, 130

6    F.3d 365, 370 (9th Cir. 1997) (internal citations and quotation marks

7    omitted); see also Davis v. Woodford, 384 F.3d 628, 638-39 (9th Cir.

8    2004), cert. denied, 545 U.S. 1165 (2005) (discussing same).

9    Fundamental unfairness is shown if the "impermissible joinder had a

10   substantial and injurious effect or influence in determining the

11   jury's verdict." Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir.

12   2000), cert. denied, 534 U.S. 847, 943 (2001).[9]

13

14       "[I]t is well settled that defendants are not entitled to

15   severance merely because they may have a better chance of acquittal in

16   separate trials." Zafiro v. United States, 506 U.S. 534, 540 (1993).

17   However, "[a] defendant might suffer prejudice if essential

18   exculpatory evidence that would be available to a defendant tried

19   alone were unavailable in a joint trial." Id. at 539 (citation

20   omitted).   "When the reason for severance is the need for a

21   codefendant's testimony, the threshold showing required of the

22   defendant is (1) that he would call the defendant at a severed trial,

23

24       [9]    To the extent Petitioner contends the court's refusal
25   to sever violated state law, Petitioner is not entitled to habeas
     relief.   See Estelle v. McGuire, 502 U.S. at 67-68; 28 U.S.C. §
26   2254(a).   In addressing a challenge to a refusal to sever, a
     federal habeas court should neither "depend on the state law
27   governing severance in state trials" nor "consider procedural
     rights to severance afforded in federal trials." Grisby v.
28   Blodgett, 130 F.3d at 370.

1   (2) that the codefendant would in fact testify, and (3) that the

2   testimony would be favorable to the moving party." United States v.

3   Reese, 2 F.3d 870, 892 (9th Cir. 1993), cert. denied, 510 U.S. 1094

4   (1994); see also United States v. Mariscal, 939 F.2d 884, 885 (9th

5   Cir. 1991).  Petitioner must show that Todd's purported proposed

6   testimony was "substantially exculpatory."  United States v. Mariscal,

7   939 F.2d at 885 (citations omitted); see also United States v. Pitner,

8   307 F.3d 1178, 1181 (9th Cir. 2002).

9

10      Petitioner's claim fails for several reasons.  By the time

11  Petitioner wished to call Todd to testify, Todd had pled guilty, and

12  hence, as the Court of Appeal reasonably concluded, the trials

13  effectively were severed.  Petitioner's inability to secure Todd's

14  testimony was caused not by any failure to sever, but by the court's

15  decision to delay Todd's sentencing coupled with Todd's unwillingness

16  to testify while his sentencing was pending, a situation that would

17  have existed even if the court had severed the cases.[10]  Regardless of

18  severance, Petitioner had no right to require Todd to be sentenced

19  before Petitioner called Todd as a witness in Petitioner's case.  See

20  Mack v. Peters, 80 F.3d 230, 235 (7th Cir. 1996) ("Severance of co-

21  defendants does not create a right to a particular trial sequence. . .

22  . [¶] Nor does a conditional offer to testify by a co-defendant create

23

24      [10]    Todd's Fifth Amendment privilege against self-
25  incrimination existed at least until his conviction became final
    following imposition of sentence.  See Mitchell v. United States,
26  526 U.S. 314, 326-27 (1999) ("Where the sentence has not yet been
    imposed a defendant may have a legitimate fear of adverse
27  consequences from further testimony.").

28

1  a right to control trial sequence."); see also United States v.

2  Mariscal, 939 F.2d at 886 ("A trial court does not abuse its

3  discretion in refusing to accede to a codefendant's offer to testify

4  when that offer is conditioned on his trial being completed first.")

5  (citations omitted); United States v. Gay, 567 F.2d 916, 919-20 (9th

6  Cir.), cert. denied, 435 U.S. 999 (1978) (district court did not abuse

7  discretion in denying severance motions where co-defendant made

8  conditional offer to testify for other defendants only if co-defendant

9  were tried first).

10

11      Additionally, Petitioner has not shown that Todd would have

12  provided "substantially exculpatory" testimony for Petitioner had the

13  trials been severed.  Regardless of Petitioner's hearsay evidence

14  concerning what Todd purportedly told Petitioner and other inmates,

15  Todd himself told the court that Todd was unaware of, and could not

16  testify concerning, Petitioner's whereabouts during the incident, and

17  that Todd had "no memory" of Petitioner during the incident (see R.T.

18  35).   The Court of Appeal reasonably concluded that the record failed

19  to show that Todd's testimony would have aided Petitioner.  See Grisby

20  v. Blodgett, 130 F.3d at 370 (rejecting claim where the proposed

21  testimony "would not have clearly exonerated" petitioner); Mack v.

22  Peters, 80 F.3d at 236 (showing that proposed testimony would be

23  exculpatory insufficient where co-defendant produced two different

24  statements, one inculpating petitioner and the other exculpating him).

25

26      For the foregoing reasons, the Court of Appeal's rejection of

27  Petitioner's challenge to the trial court's refusal to sever was not

28  contrary to, or an objectively unreasonable application of, any

1 clearly established Federal law as determined by the United States

2 Supreme Court.  See 28 U.S.C. § 2254(d); Harrington v. Richter, 131

3 S. Ct. at 785-87.  Petitioner is not entitled to habeas relief on this

4 claim.

5

6                          **RECOMMENDATION**

7

8      For the foregoing reasons, IT IS RECOMMENDED that the Court issue

9 an Order: (1) approving and adopting this Report and Recommendation;

10 and (2) denying and dismissing the Petition with prejudice.

11

12      DATED:  August 18, 2011.

13

14

15                              _____/S/_____

16                                   CHARLES F. EICK
                              UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

If the District Judge enters judgment adverse to Petitioner, the District Judge will, at the same time, issue or deny a certificate of appealability.  Within twenty (20) days of the filing of this Report and Recommendation, the parties may file written arguments regarding whether a certificate of appealability should issue.